

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIKE ARMINTROUT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04 C 313 |
| v. | ) |
| | ) Judge Mark Filip |
| BLOOMINGDALE'S PIZZA, INC., | ) |
| d/b/a ROSATI'S PIZZA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S SUMMARY JUDGMENT MOTION

Plaintiff, Mike Armintrout ("Plaintiff" or "Mr. Armintrout"), is suing Bloomingdale

Pizza, Inc. ("Bloomingdale Pizza, Inc." or "Defendant"), alleging violations of Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII").

Plaintiff, a white male, alleges that he was subjected to a gender-based hostile work

environment and suffered an adverse employment action in retaliation for lodging

complaints about it. (D.E. 1 ¶¶ 10, 12, 14.)[1] Defendant has moved for summary

judgment in accordance with Fed. R. Civ. P. 56. For the reasons stated below, the Court

grants Defendant's motion.

### RELEVANT FACTS[2]

---

[1] The designation "D.E." refers to the docket entry number of the cited document, followed by
the appropriate paragraph or page number.

[2] The Court takes the relevant facts from the parties' respective summary judgment filings,
including their filings required under Local Rule 56.1: see, e.g., D.E. 11, D.E. 22-23, D.E. 26.
Where the parties disagree over relevant facts, the Court sets forth the competing versions, where
germane. In addition, the Court, as it must, resolves genuine factual ambiguities in the
non-movant's favor. See Foley v. City of Lafayette, 359 F.3d 925, 928 (7th Cir. 2004). Local
Rule 56.1 ("L.R. 56.1") requires that statements of fact contain allegations of material fact, and
the factual allegations must be supported by admissible record evidence. See L.R. 56.1; Malec v.

During the second week of February 2003, Plaintiff was hired by Bloomingdale's

Pizza as a "kitchen manager." (D.E. 22 ¶¶ 25-27.) During the interview process,

Plaintiff was told that the kitchen manager would be responsible for controlling and

---

*Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. *See, e.g., Koszola v. Bd. of Ed. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995) (collecting cases)). For this reason, the Court disregards the portion of D.E. 26 titled "Defendant's Reply to Plaintiff's Rule 56.1(b)(3)(A) Response to Each of The Numbered Paragraphs of Defendant's Statement of Material Facts," as LR 56.1 does not contemplate or allow such a "reply." *See* LR 56.1. However, under LR 56.1, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact. *See Malec*, 191 F.R.D. at 584 (failure to adhere to L.R. 56.1 requirements, including citation to specific evidentiary materials justifying denial, is equivalent to admission). This rule, for example, prompts the Court to disregard Mr. Armintrout's responses to Def. SF ¶¶ 20, 54, 74 and 80, which neither admit nor deny Defendant's well-supported assertions. In response to various of Defendant's numbered statements of undisputed fact, Plaintiff moves "to strike," alleging that "[t]he citation to the record is misleading and taken out of context and does not support the alleged material set forth . . . ." *See, e.g.*, Pl. Resp. to Def. SF ¶¶ 33, 35. Similarly in Def. Resp. to Pl. SF, Defendant variously moves to "strike legal conclusions" in certain numbered paragraphs. *See, e.g.*, D.E. 26 ¶ 7, 8, 13. As these "motions" were not brought separately for consideration, the Court does not rule on these "motions" individually. Instead, the Court will draw only from the portions of Def.'s SF. and Pl.'s SF that are appropriate, and it will ignore any unsupported or improperly supported statements of fact, as well as any improper legal conclusions. *See, e.g., Malec*, 191 F.R.D. at 583 ("[A] movant's 56.1(a) statement should contain *only* factual allegations. It is inappropriate to allege legal conclusions"). In the same vein, to the extent the Court finds that either party's assertions of material fact are not supported by the cited materials, those assertions are disregarded. *See id.* ("Factual allegations not properly supported by citation to the record are nullities.").

The Local Rule 56.1 framework does not allow a non-movant to allege new affirmative facts in its response to the movant's 56.1 statement, nor does it require a district court to scour the totality of the Rule 56.1 filings (including any statements of additional facts by the non-movant that are simply referenced in the non-movant's response to the movant's 56.1 statement). *See, e.g., Malec*, 191 F.R.D. at 584 (citing *Midwest Imports*, 71 F.3d at 1317); *accord, e.g., Watts v. SBC Services, Inc.*, No. 05 C 3111, 2006 WL 2224054, *1 (N.D. Ill. July 31, 2006) (citation omitted). Accordingly, the Court deems admitted properly supported statements of fact by the movant where Plaintiff simply referenced in response alleged contradictory materials in its statement of additional material facts. *See, e.g.*, D.E. 22 ¶¶ 52, 95.

Finally, the Court notes that Plaintiff consistently disregards his duty to cite to the respective statements of fact in his summary judgment response brief (D.E. 20). *See Malec*, 191 F.R.D. at 586; *accord, e.g., Solaia Tech LLC v. Arvinmeritor, Inc.*, 361 F. Supp. 2d 797, 826-27 (N.D. Ill. 2005); *Washington v. Int'l Survey Research LLC*, No. 04 C 1450, 2005 WL 1162965, *1 (N.D. Ill. May 16, 2005). Indeed, Plaintiff's response does not contain a single citation to the statements of fact. This Court is not required to scour the voluminous Rule 56.1 filings to determine whether Plaintiff's factual claims in his response brief are, in fact, well-taken. This practice is materially improper.

supervising employees,[3] that he might have to "weed through" problem employees, and that he would be expected to take care of any other problems that might arise. (D.E. 22 ¶¶ 25-26.) The day crew at Bloomingdale's Pizza included, for example, a female dishwasher, the wait staff, and two male cooks, Antonio Cruz ("Antonio") and Luis ("Luis") Negrete. (*Id.* ¶¶ 28; D.E. 1, Ex. 1.) Both Antonio and Luis worked at Bloomingdale Pizza prior to Mr. Armintrout's hiring. (D.E. 22 ¶ 42.)

Almost immediately after starting work at Bloomingdale Pizza, Plaintiff claims that he "witnessed and experienced sexually harassing conduct on an almost daily basis." (*Id.* ¶ 34.) On his very first day, Antonio asked Plaintiff if he was married, "how many times he had masturbated the night before, if he 'ate out' his wife or stepdaughters," and whether Antonio could "fuck" Plaintiff's stepdaughters.[4] (*Id.* ¶ 46.) Thereinafter, Antonio would ask these same or similar questions regarding Plaintiff's wife or stepdaughters on a daily basis. (*Id.* ¶ 48.) In addition, Luis and Antonio "often told" Mr. Armintrout that they wanted to have sex with him. (D.E. 26 ¶ 4.) This and similar behavior was ongoing.

During the course of his employment at Bloomingdale Pizza, Antonio would approach Plaintiff and other employees, both male and female, from behind while fully clothed and imitate the act of anal intercourse. (Plaintiff referred to this in his deposition as a "dry-hump"). (D.E. 22 ¶ 53.) Plaintiff did not believe that Antonio literally wanted to have sexual intercourse with him, but instead thought that Antonio was engaging in these actions to "get his goat." (*Id.* ¶ 54.) Antonio, Luis and Juan, Bloomingdale Pizza's

---

[3] Unless otherwise specified, the denomination "employee" means a nonsupervisor.

[4] Many of the undisputed facts in this matter describe vulgar and offensive language and conduct. While the Court regrets that it must do so, it believes directly quoting the language used and describing the conduct alleged is required in order to render an accurate opinion.

night kitchen manager at the time, also "dry-humped," pinched, fondled, and inappropriately touched Bloomingdale Pizza employees, both male and female, including Plaintiff, although Plaintiff himself was never a victim of any allegedly harassing conduct by Juan. (*Id.* ¶¶ 36-37, 53.) Plaintiff also observed Luis "pinch other male employees on their 'boobs'" and kiss male employees on their checks while stating, "Oh, here's my boyfriend, my lover." (*Id.* ¶ 72.) At one point, Luis pinched Plaintiff's "butt" and "came close" to touching his "private parts." (*Id.* ¶ 62.) In addition, Luis "pantsed" (*i.e.*, pulled down Plaintiff's pants) on one occasion. (D.E. 26 ¶ 12.) This led to a physical fight between Plaintiff and Luis, in which Plaintiff himself took the first swing, and which needed to be broken up by Ms. LuBecky, the pizzeria owner. (D.E. 22 ¶¶ 63, 112-113.) In the fight, Plaintiff (who is 6'2" and weighs some 310 pounds), took down Luis (who apparently is some one hundred pounds lighter and several inches shorter) "instantly and kept his knee on Luis's chest after Luis touched or tugged on Plaintiff's 'big goofy pants with . . . peppers" on them. (*Id.* ¶ 115; Plaintiff's Dep. at 77, 111.) Plaintiff first explained that he initiated the fight because he "wanted to do some more ass kicking" (D.E. 22 ¶ 114), and three days later he told the pizzeria owner that he had "initiated the fight because I thought I could get the best of him" but that Plaintiff "forgot I was not as young as I used to be and I got my ass kicked." (*Id.* ¶ 117).

The kitchen employees at the pizzeria, in addition to engaging in the aforementioned vulgar and/or inappropriate pinching and grabbing behaviors towards men and women alike, often yelled at each other and threw dough at each other. (*Id.* ¶ 38.) The employees engaged in other juvenile behavior such as placing stickers and food on each other. (*Id.* ¶ 40.) Plaintiff testified that he believed that this sort of behavior,

4

including Luis's putative effort to grab Plaintiff's "private parts," was an effort to "get his goat," and that "They all were. It was all a big — all a big joke." (*Id.* ¶ 77[5]; *see also id.* ¶ 54 (undisputed that "Plaintiff did not think that Antonio literally wanted to have sexual intercourse with him, but that he was engaging in such actions to 'get his goat.'").)

Steve Taube, a Bloomingdale Pizza employee, testified that Plaintiff and Luis were "always arguing about work." (*Id.* ¶ 66.) Lee Ann Catalano, another employee, testified that Plaintiff and Luis were "fighting all the time" over control in the kitchen and that on one occasion, the shouting, swearing, and threatening between the two men struggling for control caused her to seek assistance from Ms. Regina LuBecky, Plaintiff's boss and the owner of Bloomingdale Pizza. (*Id.* ¶¶ 67-68.) Plaintiff did not tell LuBecky about the behavior of which he now complains immediately after he started at Bloomingdale Pizza because he thought Antonio was just trying only to "see what he was made of." (*Id.* ¶ 47.) A couple of weeks later, however, Plaintiff allegedly told LuBecky that "sexual harassment was rampant in the kitchen, both male on male and male on female." (D.E. 23 ¶ 7.) In addition, Plaintiff told LuBecky that Antonio was not listening to him, was using vulgar language, and was being defiant. (D.E. 22 ¶¶ 50-51.) At some point, Plaintiff also told LuBecky that some of the employees, including Antonio, were "obscene," "inappropriate" and "disgusting," but that "it's no big deal because it's common in kitchens." (*Id.* ¶ 52.) Mr. Armintrout claims that LuBecky admitted to knowing that the behavior he reported was going on, but that she told him

---

[5] Plaintiff claims that "the citation to the record is misleading and taken out of context and does not support the alleged material fact," moving "to strike" this allegation. (D.E. 22 ¶ 77.) The Court's review of Plaintiff's deposition, however, reveals that the statement is well-supported. Because Plaintiff does not cite to any evidence contrary to this assertion, it is deemed admitted. *See Malec*, 191 F.R.D. at 584 (failure to adhere to L.R. 56.1 requirements, including citation to specific evidentiary materials justifying denial, is equivalent to admission).

that she did not know what to do about it. (D.E. 23 ¶ 8.)[6] LuBecky stated that she did

not want to fire the employees engaging in this behavior in part because she did not want

to have to rehire and retrain all of the employees. (*Id.* ¶ 9.)[7] At some point later, Plaintiff

told LuBecky that he and Antonio were getting along better and that the two of them had,

figuratively, "kissed and made up." (D.E. 22 ¶ 55.)

Ms. LuBecky herself witnessed at least part of the physical fight between Plaintiff

and Luis, and she actually needed to break it up. (*Id.* ¶¶ 113-14.) Immediately thereafter,

LuBecky told Luis that Plaintiff had the power to fire both Luis and his other

subordinates—although Plaintiff claims that he really did not have such power,

notwithstanding his admission that LuBecky so informed the workforce. (*Id.* ¶ 116; D.E.

23, ¶¶ 9-10.) In either event, it appears clear that LuBecky, the sole owner of the

pizzeria, expected all of the managers to consult with her about such employee

termination decisions (D.E. 26 ¶ 27); it is undisputed that Plaintiff routinely spoke with

and sought out conversations with Ms. LuBecky in which he discussed work issues as

well as personal issues he was facing, such as issues he was having in his marriage and

with his health. (D.E. 22 ¶ 29 (Plaintiff became "quite fond" of Ms. LuBecky and would

have such conversations, at least briefly, on a daily basis); *id.* ¶ 109.)

---

[6] Although Defendant "moves to strike the legal conclusions contained" in these paragraphs
(referring to D.E. 23 ¶¶ 7-9), and asserts that "Plaintiff's citations to the record do not support the
legal conclusions" within the numbered paragraphs, a review of the cited document, namely Mr.
Armintrout's deposition, reveals that Plaintiff did testify that he and LuBecky discussed what he
believed to be "sexual harassment in the kitchen," regardless of whether, as a legal matter, the
behavior is in fact actionable under Title VII. Defendant does not deny that Plaintiff and
LuBecky discussed what Plaintiff termed "sexual harassment in the kitchen," and the Court takes
the fact of the conversation as true, without regard to its legal accuracy.

[7] Although defendant "denies" that LuBecky "prevented plaintiff from firing employees," Mr.
Armintrout's deposition supports the assertion that she told Mr. Armintrout she "did not want to
do that because you've got to rehire and retrain and then that's a whole mess." (Plaintiff's Dep.
at 80.)

6

On or about May 22, 2003 (the day before Plaintiff's last day at Bloomingdale Pizza), Plaintiff and Antonio got into a verbal argument, with Antonio screaming at Plaintiff, calling him a "fucking asshole," and saying that Plaintiff "burned the sauces." (*Id.* ¶¶ 58, 121, 126.) Plaintiff felt that this was the "last straw" with Antonio and attempted to fire him, telling Antonio, "Get out. You're gone." (D.E. 22 ¶ 57.) However, when Plaintiff arrived at work the next day, Antonio was still working there and LuBecky, the pizzeria owner, told Plaintiff that Antonio was not being fired at that time. (*Id.* ¶ 59.) That same day, approximately three months after Plaintiff's first day at Bloomingdale Pizza, LuBecky told Plaintiff that she did not believe that he had the ability to effectively manage the kitchen and it was easier to fire Plaintiff than to get rid of the entire kitchen staff. (D.E. 22 ¶ 123; D.E. 26 ¶ 32.) Apparently out of sympathy for Plaintiff, who had money problems, LuBecky offered to retain Plaintiff in a cook's position, with corresponding (*i.e.*, lower) wages. (D.E. 22 ¶ 124.[8]) Instead of accepting this arrangement, Plaintiff told LuBecky "I can't live on that" and "parted company" with Bloomingdale Pizza. (*Id.* ¶ 125.) Subsequently, but prior to the filing of the instant suit, and based in part on Plaintiff's allegations, LuBecky fired Antonio, Luis, and Juan. (*Id.* ¶¶ 61, 78, 92.)

Other than attempting to fire Antonio relating to his statement regarding the burned sauce, Plaintiff never attempted to discipline either Antonio or Luis for any of the allegedly harassing conduct he experienced or witnessed, or for refusing to follow his work orders. (*Id.* ¶ 95.) For example, when Luis refused to perform a work task in question, he would "leave it alone" rather than engaging in a game of "Yes, you are; no, I'm not; yes, you are; no, I'm not," with Luis. (*Id.* ¶ 96.) Plaintiff felt that although he

---

[8] Plaintiff's objection to this statement of fact is not well-taken.

tried to manage kitchen employees, he never had any "backup or authority by ownership" and that the behavior by his subordinates made him feel "outcast" and "impotent" as far as what he could do as kitchen manager. (*Id.* ¶ 101.)

After leaving the pizzeria, Plaintiff received two weeks of pay and LuBecky gave him two weekly checks at once in light of his financial condition. (*Id.* ¶ 127.) Plaintiff never filed for unemployment benefits; he testified that "I've been through the same situation that I went through at Bloomingdale's Pizza before, and I would have lost." (*Id.* ¶ 128.) Plaintiff's statement appears to be a reference to the termination of his job preceding the Bloomingdale Pizza job, at "Nick and Tony's" in Geneva. (*Id.* ¶ 129.) There, he worked as an executive chef for a period of two weeks, but he then received notice that he was being demoted from a management position to that of a line cook. (*Id.*)

On November 21, 2003, Armintrout filed a charge of discrimination with the EEOC, alleging that he was harassed on the basis of his sex while he was employed at Bloomingdale Pizza. (*Id.* ¶ 1.) He received a "Notice of Right to Sue" letter from the EEOC on November 28, 2003. (*Id.* ¶ 2). Plaintiff then filed his Complaint in this matter on January 16, 2004. (D.E. 1.) Plaintiff's Complaint contains one unnumbered count alleging a violation of Title VII. (*Id.*) In the Complaint, Plaintiff alleges that "unwelcome sexual conduct created an intimidating, hostile and offensive work environment." (*Id.* ¶ 10.) Plaintiff further alleges that after complaining of this unwelcome conduct, he "suffered an adverse employment action by being terminated on or about May 23, 2003." (*Id.* ¶ 12.)

## ANALYSIS

### I. Summary Judgment Standards

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

### II. Applicable Title VII Principles

Defendant has moved for summary judgment, arguing that the "undisputed material facts in this matter establish that Plaintiff cannot sustain his claims as a matter of law" under Title VII. (D.E. 11 at 1.) Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). There are several ways to frame Title VII claims and, with all respect, it is not entirely clear from Plaintiff's Complaint how he intended to frame his, as he fails to allege any separate counts. However, because Plaintiff alleges an "intimidating, hostile and offensive work environment," the Court will consider his claim as a "hostile work environment" or "sexual harassment" claim.

9

*See Cooper-Schut v. Visteon Automotive Systems*, 361 F.3d 421, 426 (7th Cir. 2004) (teaching that "an employer violates Title VII if it is responsible for a 'hostile work environment.'") (citation omitted). Sexual harassment claims may lie both in situations where an individual is harassed by someone of the opposite sex, as well as in situations where same-sex harassment is alleged. *See Hamm v. Weyauwega Milk Products, Inc.*, 332 F.3d 1058, 1062 (7th Cir. 2003) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998), and explaining that "in same-sex harassment cases, the central question is whether the harassment occurred 'because of plaintiff's sex.'").

Of particular relevance in this case, and as will be discussed further later, "Title VII prohibits an employer from harassing an employee '*because of* the employee's sex.'" *Spearman v. Ford Motor Co.*, 231 F.3d 1080, 1084 (7th Cir. 2000) (emphasis added and further internal punctuation omitted; quoting *Oncale*, 523 U.S. at 78). Thus, "[s]ame-sex sexual harassment is actionable under Title VII to the extent it occurs 'because of' the plaintiff's sex." *Id.* (further internal quotation marks and citation omitted). This principle—that putative harassment, to be actionable under Title VII, must occur "because of" the plaintiff's sex—has been repeatedly articulated throughout Supreme Court and Seventh Circuit precedent. *See, e.g., Oncale*, 523 U.S. at 79 (stating that Title VII prohibits "discrimination 'because of sex'") (internal citation omitted); *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir. 2004) ("In order to maintain an actionable claim of hostile work environment, Wyninger must first demonstrate that a supervisor or coworker harassed her because of her sex.") (citing *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462 (7th Cir. 2002)); *Sitar v. Indiana Dept. of Transportation*, 344 F.3d 720, 727 (7th Cir. 2003) ("Sitar complained only that she felt picked on, not

that she was discriminated against 'because of' sex or gender, which is what Title VII requires.") (citation omitted). As a corollary to this principle, Seventh Circuit precedent teaches that the so-called "equal-opportunity" sexual harasser with respect to men and women, even such a harasser who uses sexually charged or vulgar words or behavior, is outside the ambit of Title VII because there is no discrimination occurring on the basis of sex. *See Holman v. State of Indiana*, 211 F.3d 399, 403 (7th Cir. 2000) (dismissing claims of husband and wife who alleged that their supervisor sexually harassed both of them by requesting sexual favors, and stating that "Title VII does not cover the 'equal opportunity' . . . harasser . . . because such a person is not *discriminating* on the basis of sex") (collecting cases; emphasis in original); *accord, e.g., Oncale*, 523 U.S. at 80 ("'The critical issue, [as] Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'") (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)); *Wyninger*, 361 F.3d at 976 (dismissing hostile work environment claim where the evidence showed that the putative harassers were "crude individuals who treated everyone poorly") (internal punctuation and citation omitted). As explained below, this principle is fatal to Plaintiff's hostile workplace claim.

In addition, Plaintiff alleges in his Complaint that "[a]fter complaining of said conduct, [he] suffered an adverse employment action by being terminated." (D.E. 1 at 4.) Therefore, the Court also considers the viability of a Title VII retaliation claim. *See generally Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006) ("Title VII makes it unlawful 'for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful

employment practice by [Title VII].' 42 U.S.C. § 2000e-3(a). This type of discrimination

is commonly called 'retaliation.'"). This claim also fails, as explained below.[9]

III.    Plaintiff's Hostile Work Environment Claim Fails

    A.    To Be Actionable as a Hostile Work Environment Claim Under Title VII,
          The Complained-of Behavior Must Be Because of Plaintiff's Sex

To survive a summary judgment motion, an employee alleging a gender-based

hostile work environment must show: "(1) []he was subjected to unwelcome sexual

harassment; (2) the harassment was based on sex; (3) 'the harassment had the effect of

unreasonably interfering with the plaintiff's work performance in creating an

intimidating, hostile or offensive working environment that affected seriously the

psychological well-being of the plaintiff; and (4) there is a basis for employer liability.'"

*Robinson v. Sappington*, 351 F.3d 317, 328-29 (7th Cir. 2003) (quoting *Parkins v. Civil*

_____

[9] Because Plaintiff does not anywhere allege that Defendant took an adverse job action against
him while motivated by an impermissible purpose, such as gender discrimination, the Court does
not analyze his claim as one for sex discrimination. Nor, if it did, could Plaintiff survive
summary judgment on such a claim. Precedent teaches that to survive a motion for summary
judgment, a claimant alleging sex discrimination must identify direct evidence that his
employer's decision to take an adverse job action against him was motivated by an impermissible
purpose, such as sex. *See, e.g., Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006).
Alternatively, if he cannot present evidence under the "direct method" of proof, a Title VII
claimant can proceed under the indirect/*McDonnell Douglas* framework by establishing that: (1)
he was a member of a protected class; (2) he was performing his job satisfactorily; (3) he
experienced an adverse employment action; and (4) similarly situated individuals were treated
more favorably. *See, e.g., id.* Plaintiff has presented no evidence under the "direct method" that
Bloomingdale Pizza demoted or terminated Plaintiff because of his gender. With respect to the
indirect method, even assuming that he could satisfy all of the other prongs of this framework, an
assumption the Court merely makes for the sake of argument, Plaintiff has not presented any
evidence that similarly situated employees outside his protected class (*i.e.*, female employees)
were treated more favorably. That defeats such a claim. *See, e.g., id.* at 611 (affirming grant of
summary judgment for defendant in a Title VII case "[b]ecause there is no evidence that
Raymond was treated differently than a similarly situated employee outside her protected class,"
and therefore she "ha[d] not made her prima facie case of discrimination."). In addition, the case
would independently fail on pretext grounds, as Plaintiff has presented no evidence suggesting
that Defendant's proffered basis for removing him from a managerial position—*i.e.*, that Plaintiff
had shown an inability to manage and control the workforce—is a lie or false pretext for unlawful
discrimination. *See, e.g., Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir.
2000). That reason also independently would support summary judgment for Defendant on any
sex discrimination claim.

*Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998), and citing *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002)). As explained below, the incidents of which Plaintiff complains are not actionable because Plaintiff has not raised a genuine issue of fact as to whether they were based on Plaintiff's gender. The facts indicate that the individuals about whom Plaintiff complains did not discriminate against him because of his sex; in fact, these individuals engaged in identical and similarly lewd and intolerable behavior towards female and male employees of Bloomingdale Pizza alike.

      B.      Claims Of Harassment By "Equal Opportunity" Harassers Are Not Actionable Under Title VII Because They Do Not Involve Discrimination Based on Sex

The Seventh Circuit has taught that, "in the context of a sexual discrimination charge based on a hostile work environment, '[t]he critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 808 (7th Cir. 2001) (quoting *Oncale*, 523 U.S. at 80). Thus, "an employer cannot be held liable for creating or condoning a hostile working environment unless the hostility is motivated by gender." *Id.* at 808. The facts here do not indicate that the reprehensible and sexually-charged language and actions to which Plaintiff claims he was exposed were motivated by gender and, as a result, Plaintiff's claim fails.

Plaintiff claims that he personally was subjected to harassing behavior by Luis and Antonio while employed at Bloomingdale Pizza. (D.E. 22 ¶¶ 35-36.)[10] To be sure,

---

[10] Plaintiff objects to this statement of fact as "misleading and taken out of context." (D.E. 22 ¶ 35.) The Court's review of the record reveals that the statement is well-supported. As Plaintiff has neither denied the statement nor offered any contrary evidence, the Court deems the statement admitted. While both parties include in their LR 56.1statements issues relating to interactions between "Steve" and "Juan," and Bloomingdale Pizza's handling of such interactions, Plaintiff's concession that he is only alleging harassment against him by Antonio and Luis, and Defendant's failure to raise any serious challenge to the hostile nature of the work environment created by

13

the alleged statements and actions of these two men were vulgar and deplorable, and the statements and actions had sexual content. For example, Mr. Armintrout testified that on the first day of his employment, and every day thereafter, Antonio asked Mr. Armintrout "how many times he had masturbated the night before, if he 'ate out' his wife and stepdaughters, and . . . if he could 'fuck' Plaintiff's stepdaughters." (*Id.* ¶ 46.) Plaintiff alleges that Luis and Antonio also often told him that "they wanted to have sex with" him. (D.E. 23 ¶ 4.) Plaintiff also experienced Antonio and Luis "physically 'dry-hump,' pinch, fondle and inappropriately touch both male and female employees," including Plaintiff himself. (D.E. 22 ¶ 37; *see also id.* ¶ 53 (Plaintiff testifying that Antonio would approach him "from behind, fully clothed," and then simulate "dry humping" Plaintiff, which was the imitation of "the act of anal intercourse." ); *id.* ¶ 62 (Plaintiff agreeing that Luis "pinched his butt and 'came close' to touching his 'private parts'"); *id.* ¶ 70 (Plaintiff agreeing that Luis would "pinch and grab employees on the buttocks, including Plaintiff and female waitresses"); *id.* ¶ 111 (Plaintiff agreeing that Luis yanked his "'shift pants' which then fell down").) Mr. Armintrout testified that he was "talking about Antonio" and later "Luis" when he agreed that it was the same people "engaging in male-on-male harassment . . . [and] male on female." (*Id.* ¶ 35.)

Plaintiff alleges that this conduct is actionable under Title VII because it was based on his "maleness." (D.E. 20 at 4.) Applicable precedent, however, and the record in this case, refutes that contention. The Seventh Circuit has held that "inappropriate

those two employees alone, leads the Court to disregard the "Steve and Juan" issues as unnecessary to the Court's analysis of whether the harassment Plaintiff alleges was gender-based, except where otherwise noted herein. *See also Paquet v. Pace, Suburban Bus Div. of Regional Transp. Authority,* 156 F.Supp.2d 761, 771 (N.D. Ill. 2001) ("The Seventh Circuit has expressly noted that harassment directed at someone other than the plaintiff is not as severe as harassment directed at the plaintiff.") (citing *McPhaul v. Board Comn'rs of Madison County,* 226 F.3d 558, 567 (7th Cir. 2000)).

conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside [Title VII's] ambit." *Holman*, 211 F.3d at 403 (dismissing claims of husband and wife who alleged that their supervisor sexually harassed both of them by requesting sexual favors because such behavior did not involve discrimination based on gender). Or, as the Seventh Circuit taught in *Berry v. Delta Airlines, Inc.*, 260 F.3d 803 (7th Cir. 2001), in the context of a hostile workplace claim:

> "[T]he critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. *Oncale*, 523 U.S. at 80 (citation omitted). Inappropriate conduct that is "inflicted regardless of sex[] is outside the statute's ambit," *Holman v. State of Indiana*, 211 F.3d 399, 403 (7th Cir. 2000), and an employer cannot be held liable for creating or condoning a hostile working environment unless the hostility is motivated by gender.

*Id.*, 260 F.3d at 808 (further collecting numerous other Seventh Circuit cases); *see also id.* at 809 (finding that objectionable incidents, while unfortunate, "are not actionable as sexual harassment under Title VII (either collectively or individually) because Berry has presented no evidence suggesting that any of these incidents were motivated by her gender").

One can certainly posit a different rule—namely, a rule that proscribes inappropriate conduct generally which is sexually-related or sexual in content. In a scholarly opinion by District Judge Barbara Crabb, she traced the history of Seventh Circuit jurisprudence in this area, including certain early analyses that perhaps suggested aspects of such an approach. *See E.E.O.C. v. Trugreen Limited Partnership*, 122 F. Supp. 2d 986, 990 (W.D. Wis. 1999). As Judge Crabb explained, however, "[i]n *Oncale*, the Supreme Court expressed explicit disapproval of this reasoning." *Id.* (citing *Oncale*, 523 U.S. at 79-80, which in turn specifically criticized certain Seventh Circuit caselaw).

15

Thus, Judge Crabb explained, Supreme Court teaching makes clear that "it is important to remember that the term 'sex' from Title VII is a reference to the victim's gender, not to carnal matters." *Id.*, 122 F. Supp. 2d at 989 (discussing *Oncale*, *supra*).

In the wake of *Oncale*, the Seventh Circuit, of course, has applied its teaching; in doing so, the Seventh Circuit has held that a so-called "equal opportunity" harasser is outside the scope of Title VII. *See Holman*, 211 F.3d at 403 ("Title VII does not cover the 'equal opportunity' . . . harasser . . . because such a person is not *discriminating* on the basis of sex") (collecting cases; emphasis in original); *accord, e.g.*, *Wyninger*, 361 F.3d at 976 ("Wyninger cannot base a hostile environment claim upon Couch's and Wade's vulgar language because, at most, they are 'crude individual[s] who treated [everyone] poorly.' Other employees, including men, were also afraid of and offended by Crouch's . . . vulgarity and insulted by Wade's approach to his supervisory role. Crouch and Wade did not interact with Wyninger any differently than they did with other male coworkers and subordinates.") (internal citation omitted). As *Holman* therefore explained, in sexual harassment cases, the "'critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment *to which members of the opposite sex are not exposed.*' This inquiry applies to both same and opposite-sex harassment." *Holman*, 211 F.3d at 403 (emphasis in original) (quoting *Oncale*, 523 U.S. at 80-81; internal and subsequent citations omitted). Thus, "Title VII does not cover the 'equal opportunity' or 'bisexual' harasser . . . because such a person is not *discriminating* on the basis of sex. He is not treating one sex better (or worse) than the other; he is treating both sexes the same (albeit badly)." *Id.*, 211 F.3d at 403 (emphasis in original; collecting Seventh Circuit precedents). Because Plaintiff

himself has presented unrefuted evidence that Antonio and Luis were exactly the type of "equal opportunity" harassers whose actions the Seventh Circuit found in *Holman* do not give rise to liability under Title VII, the Court grants Defendant's motion for summary judgment on Plaintiff's hostile work environment claim. *Accord Holman*, 211 F.3d at 403 ("If anything, it would be anomalous *not* to require proof of disparate treatment for claims of sex *discrimination* (of which sexual harassment is a subset), yet that is essentially what the Holmans urge. To do so would change Title VII into a code of workplace civility, and the Supreme Court has already rejected such an interpretation of Title VII") (emphasis in original; citing *Oncale*, 523 U.S. at 80).

In this case, it is undisputed that Mr. Armintrout "alleges that he witnessed these . . . male employees (Antonio, Luis, and Juan) physically "dry-hump," pinch, fondle, and inappropriately touch both male and female employees." (D.E. 22 ¶ 37; *see also id.* ¶ 53 (similar).) As explained further below, this conduct does not appear, at least as to Mr. Armintrout, to actually constitute sexual advances; instead, it appears to be crude and vulgar efforts on the part of the putative harassers, who had more seniority than Mr. Armintrout and/or wanted to have his supervisory position (*id.* ¶¶ 42-43, 64, 67), to "'get my [*i.e.*, Plaintiff's] goat'" (*id.* ¶ 54 (quoting Plaintiff's Dep. at 73), or to "'see what he was made of'." (*Id.* ¶ 47 (quoting Plaintiff's Dep. at 78); *see also id.* ¶ 49 (discussing Plaintiff's deposition testimony that such misbehavior and misconduct "goes on" in restaurants, but suggesting that the misconduct at the pizzeria was more extreme than usual); *id.* ¶ 52 (relating Plaintiff's statement to the pizzeria owner that "it's no big deal because it's common in kitchens")[11]; *id.* ¶ 77 (relating Plaintiff's testimony that he

---

[11] Plaintiff has not controverted the evidence in D.E. 22 ¶ 52 within the rules applicable to Rule 56.1 assertions. Accordingly, the statement in paragraph, which is supported by the cited evidence, is credited.

thought Luis was also trying to "get his goat," and that "They all were. It was all a big –
all a big joke."). Regardless of whether the misconduct and vulgar dialogue was
sincerely related to carnal sex, however, under Seventh Circuit precedent, it was not
actionable under Title VII because it was perpetrated by equal-opportunity harassers who
directed their misdeeds at both male and female employees alike. (*See, e.g., id.* ¶¶ 37,
70-72.)

      This outcome, as dictated by the substantial Seventh Circuit precedent cited
above, is also consistent with the outcome of numerous trial court cases applying that
law. *See, e.g., Goodum v. White*, No. 03 C 3257, 2006 WL 566469, *23 (N.D. Ill. Mar.
3, 2006) (collecting Seventh Circuit precedent and granting defendant's summary
judgment motion on a hostile environment claim where alleged harasser was
"disrespectful and demeaning to all of his employees regardless of their gender");
*Coughlin v. Wrigley Mfg. Co., LLC*, No. 02 C 7849, 2004 WL 1064735, *7 (N.D. Ill.
May 7, 2004) (collecting Seventh Circuit precedent); *Caines v. Village of Forest Park*,
No. 02 C 7472, 2003 WL 21518120, *2 (N.D. Ill. June 30, 2003) (collecting Seventh
Circuit precedent and holding that plaintiff had pleaded himself out of court and therefore
dismissing a same-sex harassment claim where "the detailed allegations of the [alleged
harasser's] conduct portray an individual who directed vulgar and obscene conduct of a
sexual nature toward the male and female" individuals alike); *Donlow v. SBC
Communications, Inc.*, No 05 C 0548, 2006 WL 1479548, *2 (E.D. Wis. May 25, 2006)
(granting summary judgment for defendant where evidence reflected that, although
alleged harasser may have harassed more men than women, he was the "quintessential
equal-opportunity harasser" in that he "reached out and touched 'everybody,'" and

further finding that although he "touched different body parts when harassing men and women," this "does not create enough disparity to constitute gender-based discrimination of men.") (citing *Holman*, 211 F.3d at 403). While the Court in no way condones the conduct Plaintiff alleges that he experienced at Bloomingdale Pizza, applicable precedent teaches that his remedy for such misconduct does not lie in Title VII, but rather lies in state court on state law (*e.g.*, assault or battery) claims. *See Holman*, 211 F.3d at 403 ("the unfortunate objects of such harassment [by an "equal opportunity" harasser] may be limited to state law for a remedy.") (citing *Johnson v. Hondo, Inc.*, 125 F.3d 408, 410 (7th Cir.1997)).[12]

C.    The Complained Of Conduct Appears To Relate to Workplace Disputes and Not Sexual Relations In Any Event And Is Dismissable on Such Basis

In addition to Plaintiff's claims being nonactionable under Title VII because the behavior of which he complains was unrelated to his gender, Defendant argues that even if the behavior was directed only at Plaintiff, it would not be actionable because it related to workplace disagreements or was simply reprehensible juvenile behavior and was not related to Plaintiff's gender in any event. (D.E. 11 at 8-10.) Defendant appears to be correct, which provides a second independent basis to reject the Title VII hostile workplace claim.

---

[12] The fact that some of the conduct Plaintiff alleges included references to his wife and stepdaughters does not change the conclusion that Plaintiff has not shown that he was discriminated against because of his sex. *See Johnson v. Hondo, Inc.*, 125 F.3d 408, 413 (7th Cir. 1997) (finding that plaintiff's contention that his alleged harasser's actions were a homosexual advance were "belied by his own testimony" that the alleged harasser made sexually explicit comments about plaintiff's girlfriend and affirming summary judgment on same-sex harassment claim); *accord Equal Opportunity Employment Commission v. TruGreen Ltd. P'ship*, 122 F.Supp 2d 986, (W.D. Wis. 1999) (Crabb, J.) (granting summary judgment in a same-sex discrimination case and holding that "[t]here is no meaningful way of distinguishing . . . this case . . . from *Johnson*. Both cases turn on allegations that a male employee directed lewd, demeaning conduct and remarks steeped in sexual overtones toward a male coworker and the coworker's wife or girlfriend.").

As before, Plaintiff's own testimony is instructive. Plaintiff, for example, testified that Luis was trying to "'get his goat,'" and that "'They all were. It was all a big – all a big joke.'" (D.E. 22 ¶ 77 (quoting Plaintiff Dep. at 74); *see also id.* ¶ 54 (Plaintiff "did not think that Antonio literally wanted to have sexual intercourse with him, but that he was engaging in such actions to 'get my [*i.e.*, Plaintiff's] goat.'") (quoting Plaintiff's Dep. at 73).) Similarly, Plaintiff testified that Antonio made certain lewd comments to "'see what he was made of'" (*id.* ¶ 47 (quoting Plaintiff's Dep. at 78)), and that, when Plaintiff started at the pizzeria, "Antonio made it 'very clear that he was there and he would be there after me.'" (*Id.* ¶ 43 (quoting Plaintiff Dep. at 67); *see also id.* ¶ 64 (reflecting that Luis was upset that Plaintiff was hired into a managerial position instead of Luis, who already was working at the pizzeria).) Plaintiff also stated, at least in one conversation to the pizzeria owner, that this sort of inappropriate behavior was "'no big deal because it's common in kitchens'" (*id.* ¶ 52 (quoting LuBecky Dep. at 86-87))—although Plaintiff also suggested that the degree of vulgar conduct was higher than usual (*id.* ¶ 49).[13] As explained, Plaintiff expressly testified Luis's actions were an attempt to "'get his goat'" and that it "'was all a big – all a big joke'" (*id.* ¶ 77 (quoting Plaintiff Dep. at 74)), and while Plaintiff suggested that he was uncertain whether Juan was homosexual, it is uncontroverted that Luis would pinch and grab female employees on the buttocks, that other employees did not perceive Luis as a homosexual, and that Luis openly talked with other employees "about girls" and asked one of the female waitresses out on a date. (*Id.* ¶¶ 70, 72, 74-75, 77.)

---

[13] The behavior in the cooking area at the pizzeria generally appears to have ranged from juvenile to asinine—with workers yelling at each other, placing or throwing food at or on each other, and, as discussed above, with substantial male-on-female and male-on-male lewd behavior (*e.g.*, the pinching and "dry humping") and other obscene discourse. (*See* D.E. 22 ¶¶ 38, 40, and other paragraphs cited extensively above.)

20

Precedent teaches that lewd and ignorant sexual banter and inappropriate groping may not, in certain circumstances at least, be evidence of any sexual advances. As the Seventh Circuit, speaking through Judge Cummings, wrote in *Johnson v. Hondo, Inc.*, 125 F.3d 408 (7th Cir. 1997):

> Although explicit sexual content or vulgarity may often take a factfinder a long way toward concluding that harassing comments were in fact based on gender . . . this need not necessarily be the case. Most unfortunately, expressions such as 'fuck me,' 'kiss my ass,' and 'suck my dick,' are commonplace in certain circles, and more often than not, when these expressions are used (particularly when uttered by men speaking to other men), their use has no connection whatsoever with the sexual acts to which they make reference—even when they are accompanied, as they sometimes were here, with a crotch-grabbing gesture. *Ordinarily, they are simply expressions of animosity or juvenile provocation* . . . .

*Id.* at 412 (affirming grant of summary judgment for employer; emphasis added). To survive summary judgment, there must be a basis in the record to conclude that the harassers' usage was different. *Id.*; *accord, e.g.*, *Spearman*, 231 F.3d at 1085 (collecting cases).

In this case, Plaintiff testified that the idiotic behavior of both Antonio and Luis (who both were fired after Plaintiff left, in part based on Plaintiff's objections concerning them) was designed to "get his goat" (see D.E. 22 ¶¶ 54, 77; *see also id.* ¶ 54 (relating Plaintiff's statement that "it was all a big – all a big joke"). There also is substantial, unrefuted evidence that both Antonio and Luis resented Mr. Armintrout's presence and/or the fact that he was hired into a managerial role instead of one of them. (*Id.* ¶¶ 43, 47, 64.) This uncontroverted evidence independently justifies summary judgment against Plaintiff's Title VII hostile workplace claim, as it is clear that the complained-of misconduct constituted what the Seventh Circuit labelled workplace "animosity and juvenile provocation" as opposed to any harrassment based on or because of Mr.

Armintrout's sex. *Johnson,* 125 F.3d at 412; *accord Hamm,* 332 F.3d at 1064 ("teaching that, "in some cases, sexually explicit remarks among male coworkers may be 'simply expressions of animosity or juvenile provocation'" and affirming grant of summary judgment to employer in sexual harassment case); D.E. 22 ¶¶ 66-67 (uncontroverted evidence from pizzeria employees who saw Plaintiff and Luis"fighting all the time" over control in the kitchen and "always arguing and fighting about work.").

IV.    Any Constructive Discharge Claim Fails

For the first time in his brief opposing Defendant's summary judgment motion, Plaintiff seems to claim that he has brought a claim for "constructive discharge" under Title VII. (D.E. 20 at 5.)  As an initial matter, and with all respect, Plaintiff's attempt to amend his Complaint in his brief opposing summary judgment is procedurally improper. If Plaintiff had wished to amend, he should have brought a motion to do so—although such an eleventh-hour motion certainly would have been denied. *See Hindo v. Univ. of Health Sciences/The Chicago Med'l School,* 65 F.3d 608, 615 (7th Cir. 1995) (discussing Seventh Circuit precedent reflecting "the litany of instances in which we affirmed a district court's denial of leave to amend a complaint where discovery has ended and a motion is pending for dismissal of the count or for summary judgment"); *accord, e.g., Conner v. Illinois Dept. of Natural Resources,* 413 F.3d 675, 679-680 (7th Cir. 2005) (finding that the district court did not abuse its discretion by denying employee's request for leave to amend complaint to add temporary assignment pay claim, when claim was improperly raised for first time in response to employer's summary judgment motion and employee never filed motion for leave to amend); *Feldman v. American Mem'l Life Ins. Co.,* 196 F.3d 783, 793 (7th Cir. 1999) (affirming denial of motion for leave to amend

complaint where discovery had closed and parties were "on the eve of summary judgment proceedings"). The Court need not analyze on summary judgment the merits of a claim that has not been brought. The Court's decision to grant Defendant's motion, therefore, is unaffected by Plaintiff's arguments relating to a constructive discharge claim.

Moreover, even if Plaintiff had properly brought a claim for constructive discharge (which he has not), and even if the Court would have allowed a post-discovery/post-summary-judgment-briefing amendment of the complaint (which the Court would not have done), a putative constructive discharge claim would not have survived summary judgment on the record presented here in any event. Seventh Circuit precedent repeatedly teaches that, not surprisingly, one cannot have a Title VII constructive discharge claim where the alleged intolerable working conditions are not discriminatory or unlawful within the meaning of Title VII. *See McPherson v. City of Waukegan*, 379 F.3d 430, 440 (7th Cir. 2004); *Gawley v. Indiana University*, 276 .3d 301, 315 (7th Cir. 2001) (citing *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998)). As *Gawley* explained, under Title VII, "[c]onstructive discharge occurs when an employee's *discriminatory* working conditions become so intolerable that a reasonable person in her position would be compelled to resign." *Id.*, 276 F.3d at 315 (emphasis added). This rule is consistent with extensive Seventh Circuit precedent teaching that, for purposes of Title VII, an employer's employment practices can be grievously mistaken, "high-handed," or even "medieval," so long as they are not discriminatory. *Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216, 1220 (7th Cir.1991), *overruled in part on other grounds by Oxman v. WLS-TV*, 12 F.3d 652 (7th Cir.1993); *accord, e.g., Green v.*

23

*Nat'l Steel Corp.*, 197 F.3d 894, 900 (7th Cir.1999) (teaching that arguing about whether an employer's honestly held reason for an employment decision was well-founded, on the one hand, or wrong, on the other, is simply "a distraction"). There are any number of working conditions that can make a job quite unpleasant or perhaps even intolerable: an imperious boss, an alcoholic boss, a verbally abusive or malicious boss, a psychotic boss, and so forth. However, Title VII is a protection against discrimination, not a mechanism to guarantee that all of the aforementioned problems—and the myriad of other ones that a workplace can suffer—are prevented under a Title VII constructive discharge theory. *Accord, e.g., Whittaker v. Northern Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (teaching that the "[w]orking conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because in the ordinary case, an employee is expected to remain employed while seeking redress.") (internal quotation marks and citation omitted); *id.* at 645 (teaching that a showing of even a hostile work environment in this setting, much less a constructive discharge situation, requires proof of discrimination) (citation omitted); *McPherson*, 379 F.3d at 440 (working conditions must be worse to justify constructive discharge allegation than to constitute hostile workplace claim); *id.* at 437-38 (threshold hostile workplace showing requires harassment because of plaintiff's sex).

As explained above, Mr. Armintrout has failed to proffer a triable case of any hostile workplace or other workplace discrimination based on or because of his sex. The cooking area of the Defendant pizzeria was a place where the discussions and behavior were vulgar and, at best, juvenile; however, Plaintiff was not subject to any discrimination based on or because of his sex. Accordingly, given that Mr. Armintrout

cannot even establish the threshold "hostile workplace" showing within the meaning of Title VII, he cannot make the even greater showing required to make out a colorable Title VII constructive discharge claim.

V.      Any Title VII Retaliation Claim Fails

Plaintiff alleges in his Complaint that after complaining of the unwelcome sexual conduct described therein, he "suffered an adverse employment action by being terminated on or about May 23, 2003"[14] (D.E. 1 ¶ 12) and that "a causal connection exists between Plaintiff's opposition and complaints of sexual harassment and Plaintiff's termination." (*Id.* ¶ 13.) This claims fails for three independent reasons. First, Plaintiff failed to include such a claim, as he must, in his EEOC charge; he therefore cannot advance it for the first time now in this litigation. Second, Plaintiff has failed to offer any proof indicating that there is a causal connection between his complaint of harassment and his termination/demotion, and he has similarly failed to offer any evidence indicating that similarly situated individuals who did not complain about sexual harassment were treated more favorably than him. Thus, he fails to adduce a triable *prima facie* case. Third, and again independently, Plaintiff has failed to offer any evidence indicating that Defendant's non-invidious reason for its adverse employment action was pretextual. This also warrants the granting of the summary judgment motion.

A.      Mr. Armintrout Failed To Present Any Retaliation Claim to the EEOC

Mr. Armintrout failed in his EEOC discrimination charge to advance any Title VII retaliation claim. In fact, Plaintiff failed to allege in his EEOC charge that he ever

_____

[14] Discovery seems to have revealed that Plaintiff was not terminated, but rather was demoted on May 23, 2003. (D.E. 22 ¶ 125.) The distinction is irrelevant, however, to the Court's analysis, as the Court considers both termination and demotion as adverse employment actions. Put differently, whether Plaintiff was fired or whether he quit in the face of a demotion, the outcome is the same.

complained about the allegedly discriminatory conduct or that he was fired, demoted, or constructively discharged.[15]

The Seventh Circuit has taught that: "[f]iling an EEOC charge, of course, is a prerequisite to suit under Title VII, in order for the EEOC to have a chance to settle disputes before lawsuits are undertaken." *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1003 (7th Cir. 1994) (affirming summary judgment against claims not raised in EEOC charge) (citation omitted). Although a plaintiff may pursue a claim not explicitly included in an EEOC complaint if his allegations "fall within the scope of the charges contained in the EEOC complaint," *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996) (citation omitted), "[n]ormally, retaliation, sex discrimination, and sexual harassment charges are not 'like or reasonably related' to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another." *Sitar*, 344 F.3d at 726 (citing, *inter alia, Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (additional citations omitted)); *accord, e.g., Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1003 (7th Cir. 1994) (holding that, "to prevent circumvention of the EEOC's investigatory and conciliatory role, only those claims that are fairly encompassed within an EEOC charge can be the subject of a resulting lawsuit.") (collecting cases). There is nothing about the record in this case that suggests a deviation from the presumptive rule that a retaliation claim (or constructive discharge claim) is distinct from a hostile workplace claim. As a result, Mr. Armintrout cannot for the first time allege a retaliation claim via his Complaint when he failed to present such a claim to the EEOC. *See, e.g.,*

---

[15] Because Plaintiff's EEOC charge did not allege a Title VII constructive discharge claim, it too fails for this additional independent reason. Given the other reasons why the putative constructive discharge claim fails, as explained above, the Court will not further address this defect in the body of the opinion.

*Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir. 1996) ("In general, we have held that retaliation and age discrimination claims are sufficiently dissimilar that an administrative charge of one fails to support a subsequent civil suit for another.") (collecting cases).[16] Accordingly, Defendant is entitled to summary judgment on any Title VII retaliation claim.

> B. Plaintiff Independently Fails to Present A Triable Prima Facie Case Concerning Retaliation

Title VII prohibits an employer from discriminating against an employee because that employee has opposed any practice deemed unlawful under the Act. *See* 42 U.S.C. § 2000e-3(a). This provision "protects persons not just from certain forms of job discrimination [and harassment], but from retaliation for complaining about the types of discrimination it prohibits." *Miller v. American Family Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000). "To prevail on a claim of retaliation, the plaintiff must show that: (1) he complained about conduct that is prohibited by Title VII; (2) he suffered an adverse employment action; and (3) the adverse employment action was caused by his opposition to the unlawful employment practice." *Spearman*, 231 F.3d at 1086 (citation omitted). "An 'adverse employment action' alters the 'terms or conditions' of one's employment." *Id.* (citing *Silk v. City of Chicago*, 194 F.3d at 788, 804 (7th Cir. 1999)).

At the summary judgment stage, a plaintiff may establish a prima facie case of retaliation using either the direct method or the indirect method of proof. Under the direct

---

[16] *See also Herron v. DaimlerChrysler Corp.* 388 F.3d 293, 303 n.2 (7th Cir. 2004) ("Under Title VII, a plaintiff must file an EEOC complaint before proceeding with a federal case and can only pursue those claims like or reasonably related to the allegations contained in the charge. Herron's EEOC charges . . . described racial discrimination, retaliation, and harassment, not constructive discharge. As the district court found, the four-month delay between his February EEOC complaint and his decision to leave was inconsistent with notice of constructive discharge. Since the charges contained in the EEOC complaint were not like or reasonably related to his EEOC allegations, Herron cannot proceed under Title VII on a constructive discharge claim.") (internal citation and quotation marks omitted).

27

method, the plaintiff must establish that he was engaged in protected activity, that he suffered an adverse action, and that the adverse action was causally connected to his protected activity. *See Treadwell v. Office of the Ill. Sec'y of State*, 455 F.3d 778, 781 (7th Cir. 2006). Under the indirect method, a plaintiff initially must make out a prima facie case that he was engaged in a protected activity, suffered an adverse employment action, was satisfactorily performing his job at the time he suffered the adverse action, and that a similarly situated employee who was not engaged in protected activity was treated more favorably. *See id.* at 782; *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). If the plaintiff establishes these elements, the burden of production shifts to the defendant to come forward with a legitimate, non-invidious reason for its adverse action. *See id.* Once the defendant presents a legitimate, non-invidious reason for the adverse action, the burden remains with the plaintiff to present evidence that the defendant's reason is pretextual. *See id.*

The record reveals that Defendant demoted or fired Plaintiff—which, in either event, was an adverse employment action. (The record reflects that Defendant offered to keep Mr. Armintrout on as a $10.00/hour salaried employee, notwithstanding that Defendant determined that it could not retain Mr. Armintrout in a managerial capacity (D.E. 22 ¶ 124)—a decision that seemingly was largely motivated by sympathy towards Mr. Armintrout and his financial hardships.[17] (He apparently has gone through two personal bankruptcies and has a variety of financial demands facing him. *See, e.g.,*

---

[17] *See* Plaintiff's Dep. at 117 (relating that, at the time, Ms. LuBecky, the pizzeria owner, told Plaintiff that "she knew that I needed the money, so she'd be willing to keep me on at $10 an hour for 40 hours"); *see also* LuBecky Dep. at 66-67 (similar).

Plaintiff's Dep. at 18.[18]). In any event, Plaintiff either faced a reduced salary or termination from his managerial role, which constitutes an adverse employment action.)

However, Plaintiff has failed to offer direct evidence that he was demoted because he complained to LuBecky about "sexual harassment," and therefore he has failed to establish a prima facie case of retaliation under the direct method. "[D]irect evidence 'essentially requires an admission by the decision-maker that his actions were based on the prohibited animus.'" *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1028 (7th Cir. 2004) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000)). The Seventh Circuit has explained that evidence of this sort is exemplified by statements such as "'I fired you because of your age.'" *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000); *see also Radue*, 219 F.3d at 616 (teaching that such comments are "rarely found"); *Castleman v. Acme Boot Co.*, 959 F.2d 1417, 1420 (7th Cir. 1992) (same). Under the direct method, the Seventh Circuit also allows "circumstantial evidence to be introduced which would allow 'a jury to infer intentional discrimination by the decision-maker.'" *Hottenroth*, 388 F.3d at 1028 (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)). Plaintiff has failed to identify any such evidence and the Court's review of the parties Rule 56.1 statements does not reveal any either. As a result, Plaintiff has failed to establish a prima facie case of retaliation under the direct method. *See Wyninger*, 361 F.3d at 981 (affirming summary judgment where "[b]eyond suspicious timing . . . there is little evidence in the record to indicate that her retaliation claim has any merit. Thus, Wyninger cannot establish a retaliation claim through the direct method.");

---

[18] During his employment preceding his job at the pizzeria, at "Nick and Tony's" in Geneva, Illinois, Plaintiff worked as an executive chef for two weeks, but then received notice that he was being demoted from a management position to that of a line cook. (D.E. 22 ¶ 129; *accord* Plaintiff's Dep. at 53-54.)

*accord, e.g., Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007) (teaching that "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim") (citation omitted).

Nor has Plaintiff satisfied the prerequisites for the *Mc-Donnell Douglas*-style prima facie case. Without even needing to consider the other prongs, Plaintiff has failed to identify any similarly situated employee who had not engaged in protected activity and was treated more favorably than him.[19] This failure to identify a more-favorably treated comparator also warrants summary judgment. *See Tomanovich,* 457 F.3d at 667 (affirming summary judgment where plaintiff "did not point to any other employee (much less a similarly situated employee)" who was treated more favorably).

C. Plaintiff's Claim Independently Fails Because He Presents No Triable Pretext Case

In addition, and again independently, even if Plaintiff had made a prima facie showing of retaliation—and the Court finds that he has not—his retaliation claim would still not survive summary judgment because Defendant has come forward with a legitimate, uncontradicted, and non-invidious reason for its adverse action. *See Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000) (teaching that pretext "means a dishonest explanation, a lie rather than an oddity or an error"); *accord, e.g., Ballance v. City of Springfield*, 414 F.3d 614, 617 (7th Cir. 2005) (teaching that, for purposes of showing pretext, it is insufficient to show that an employer's "decision was mistaken, ill considered, or foolish"; as long as the employer honestly believes its reasons,

---

[19] In fact, Plaintiff presents evidence indicating that those who complained were treated well. According to Plaintiff, after Steve Taube complained about Juan "slapping people's asses," Ms. LuBecky, the owner, un-fired Steve (Juan had attempted to fire him) and "talked to Juan," resulting in Juan never slapping "Steve's ass again." (D.E. 23 ¶¶ 29-30; *see also* D.E. 11, Ex. 8 at 30.)

then pretext has not been shown). Defendant explains that Plaintiff was demoted—not because of any complaints of discrimination and/or sexual harassment—but rather because Ms. LuBecky, the owner, "felt at that point Plaintiff did not have the ability to manage effectively because he did not have control of the kitchen . . . ." (D.E. 22 ¶ 123) and because "it was easier to get rid of Plaintiff than to get rid of the whole kitchen staff." (*Id.* ¶ 124.) The record assembled casts no doubt on the sincerity of such belief, and precedent teaches that it is not this Court's place to decide whether Ms. LuBecky's assessments about her restaurant were wise ones. *See, e.g., Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) (collecting cases and stating that courts should not attempt "to sit as a superpersonnel department" in which a terminated employee can "have the merits of an employer's decision replayed to determine best business practices."). Plaintiff himself acknowledged that he felt "impotent" and "outcast" in his position as kitchen manager. (D.E. 22 ¶¶ 98-99.) Plaintiff never disciplined either Antonio or Luis for refusing to follow his work orders, nor did he feel he had the authority to do so, regardless of the fact that Plaintiff was aware that he had been hired to "manage" the kitchen employees. (*Id.* 22 ¶¶ 25, 95; D.E. 1, Ex. 1.) Plaintiff did not tell LuBecky about what he believed to be inappropriate behavior between Juan and Steve Taube until LuBecky specifically asked him if he had ever seen Juan touch anyone in an inappropriate manner. (D.E. 22 ¶¶ 98-99.) And, last but not least, Plaintiff had recently engaged in a physical altercation with one of his employees that needed to be broken up by Ms. LuBecky herself. (*See, e.g.*, D.E. 22 ¶¶ 63, 112-113.)

To demonstrate pretext, Plaintiff would have to present some evidence that LuBecky lied and did not honestly believe her stated reason for his discharge—that his termination was the result of his inability to manage the kitchen and maintain control over

31

the staff. *See Ballance*, 424 F.3d at 617.[20] Plaintiff has not come forward with such evidence. The facts that have been presented do not support a finding that Defendant's reason for demoting Plaintiff was pretextual, but rather indicate that it was genuine. For all of these reasons, and without regard to whether Plaintiff's claim for retaliation under Title VII is otherwise barred as a matter of law, Defendant's motion for summary judgment is well taken as to any such putative retaliation claim.

## CONCLUSION

For the reasons stated above, Defendant's summary judgment motion (D.E. 11) is granted.[21]

So Ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Dated: 3/13/07

---

[20] Seventh Circuit precedent teaches, not surprisingly, that an employer can terminate or take other disciplinary action against an employee like Plaintiff who initiates a physical fight with a coworker, even if that coworker is allegedly engaging in conduct violative of Title VII. *See Johnson v. Hondo, Inc.*, 125 F.3d 408, 415 (7th Cir. 1997) (affirming summary judgment on retaliation claim where employer fired alleged victim of male-on-male sexual harassment who initiated physical fight with alleged harasser). Although any ethnic-, sex-, or race-based harassment is deplorable, the law naturally requires a putative victim to seek civil redress, and it does not license the victim to simply beat up the putative harasser or disable an employer from taking disciplinary action against a grown man who would physically attack a coworker.

[21] For some reason, the automatic docketing records of the District Court did not pick up filing of the summary judgment motion. That resulted in this opinion being issued much later than it normally would have been. The Court apologizes to the parties for any delay.